CHARLES A. MILTENBERGER *v.* SARAH A. HILL, et als. ·

At a sale *a la folle enchere* when the thing is adjudged for a smaller price than that which had been offered by the person to whom the first adjudication was made, the latter remains a debtor to his vendor for the deficiency, and for expenses incurred subsequent to the first sale. But if a higher price is offered for the thing than that for which it was first adjudicated, the first purchaser has no claim for the excess. The vendor can prosecute the vendee for a specific compliance with the terms of the sale, as for damages, by an ordinary, action, or proceed to a re-sale at the risk of the vendee. This last remedy is a severe one, and must come clearly within the provisions of the law.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J.

*George S. Lacey for plaintiff and appellant.*—On the 16th day of September, 1857, the Sixth District Court of New Orleans, in the succession of Elkaniah Reed, ordered a sale of certain property, falling to the widow and to the heir of deceased, situated in the Fourth District of the city of New Orleans.

On the 19th of October, 1857, this property was exposed at public sale and adjudicated to plaintiff for $8,000, $1,500 of which was payable in cash, and the balance on a credit until the first day of June, 1864, with eight per cent. interest thereon, payable annually.

Plaintiff paid on account of his purchase $650: $600 on the 20th of October, 1857, and $50 on the 29th of the same month.

Sarah A. Hill, as surviving partner of the community which had existed between herself and her deceased husband, Elkaniah Reed, and as dative tutrix of Charles Henry Reed, son of deceased, on the 13th of April, 1859, obtained a pretended order directing a re-sale of the property adjudicated, as above set forth, to plaintiff, and under and by virtue of this unauthorized proceeding, the property aforesaid, on the 11th of June, 1859, was sold to William J. Maynard for the sum of $8,550, $1,500 payable in cash, and the balance on the first day of June, 1865, with eight per cent. interest on said balance from the 19th day of October, 1857, until paid. Record, pp. 18 and 19.

December 9, 1859, Maynard transferred to plaintiff, Miltenberger. Record, p. 29.

The present action was commenced for the recovery of the $650, with eight per cent. interest from October 20th, 1857, to date of payment.

In their answer, defendants admit the receipt of $650, as alleged in the petition. They, however, substantially aver that the plaintiff improperly and illegally refused to comply with the terms of the sale made to him on the 19th of October, 1857; that a sale *à la folle enchère* was therefore made; and that plaintiff is bound for the loss and expenses occurring subsequent to the first sale, which exceeds the sum advanced by him to the extent of $98 93.

Wherefore, they pray that defendants recover judgment against plaintiffs for the sum of $98 93, with interest at eight per cent. from June 19th, 1959, with costs and general relief.

Your Honors will at once perceive, that defendants in their pleadings admit the receipt of the amounts in the petition alleged to have been

paid, while in their argument they will not, as an abstract question, deny their liability to return the sums advanced by plaintiffs, with interest from the dates of payment.

The defense is really *an offset* to the demand for $650; an alleged legal liability on the part of plaintiff to defray the expenses accruing subsequent to the first sale; the second having been made, as is averred, for account and at the risk of plaintiff, Miltenberger.

The characteristics and consequences of this second sale, will, therefore, form the leading subject of our argument.

We contend:

I. That the sale to Maynard was not, in fact, a sale *à la folle enchère*.

II. That it cannot, *in law*, be regarded as having that character.

III. That if such sale, in fact and at law, was for account and at the risk of Miltenberger, that plaintiff is not liable for the expenses of said sale, and the same cannot be deducted from the claim for $650 with interest.

IV. That if liable to deduction, the amount of such expenses must be fixed at a figure even less than that adopted by the District Judge.

First. The sale to Maynard, June 11, 1859, was not *in fact* a sale *à la folle enchère*.

Upon referring to the petition, your Honors will perceive that the plaintiff has averred that the title given to him at the time of his purchase, was not good and valid. In the judgment of the District Court, the invalidity of such title is expressly referred to and decided in the following language of his Honor, Judge Howell: "In this case he is liable only for the expenses legally incurred, since defendants *were in a condition to give plaintiff a good title to the property.*" Language, which, when taken by itself, and more clearly when viewed through the surrounding facts of the case, show exclusively that plaintiffs were not, at the time of the adjudication, in a condition to bestow upon Miltenberger a valid title; or, in other words, that the title conveyed was not good and sufficient.

Moreover, on the pretended failure of Miltenberger to comply with the terms of the adjudication, the property was not re-offered, as provided for in Art. 2589, Civil Code. New proceedings were had, a second family meeting was called, and the entire groundwork of the second adjudication, *which took place two years after the first*, evidently had for its object, not simply a sale *à la folle enchère*, but a second adjudication, made on account of defects of title, which existed at the time of the sale to plaintiff.

With these facts patent upon the record, how can your Honors conclude, as a mere question of fact, that the adjudication to Maynard was one *à la folle enchère?* Will not plaintiff's averment of want of title, the recognition of such invalidity by the court *a quo*, and the course pursued by defendants, in calling a second family meeting and offering the property for re-sale, two years after the first adjudication, instead of putting it up at once for sale, under Art. 2589 of Civil Code, justify this honorable court in concluding that a good title was not given to Miltenberger at the time of the adjudication to him; and that, on account of such defect of title, and not alone with the view of selling for account and at the risk of Miltenberger, the sale to Maynard was had?

MILTENBERGER .    Second. The second sale cannot *in law* be considered as one *à la folle*
HILL.    *enchère.*   Should the court, as a mere question of fact, regard the adjudi-
cation to Maynard as a sale *à la folle enchère*, still, when looked at through
the law, that character ought not to be given to it by your Honors.

The second sale cannot be treated as one made on account and at the
risk of Miltenberger, or, in other words, as a sale *à la folle enchère*, be-
cause :

1. A good title was not given to plaintiff at the time of the adjudication
to him.   *Porter* v. *Liddle*, 7 M. R. 23 ; *Ponchartrain Company* v. *Durel*,
6 La. R. 484 ; *Lernes* v. *Laubert*, 8 Rob. 224 ; *French* v. *Meux*, 9 Rob. 414.

2. The second sale does not appear to have been made under a judg-
ment of court regularly rendered and signed.    *Gallia* v. *Garcia*, Sheriff, ,
*et al.*, 2 Rob. 319.

3. The terms of the second sale were not identical with those of the first:
Terms of first sale, $1,500 cash, and balance on credit until 1864.   .
Terms of second sale, $1,500 cash, and balance on credit until 1865.
*Guillotte* v. *Jennings*, 4 An. 242.

4. Plaintiffs waived the right to a sale *à la folle enchère.*

After the adjudication to Miltenberger, he paid on account of his pur-
chase $650, upon the cash instalment, and this amount was received by
defendants without protestation or reservation of right to a sale *à la folle
enchère.*   This amounts to a waiver of right to sell on account and at the
risk of plaintiff.   Miltenberger, after paying the $650, was undoubtedly
bound otherwise to comply with the terms of the sale, and, on failure so
to do, he was liable to action for the enforcement of a specific perform-
ance of the contract or its dissolution ; but the harsh remedy, *à .la folle
enchère*, was gone the moment a partial payment was made without objec-
tion, protestation or reservation on part of plaintiff.

"The remedy by a sale *à la folle enchère* is a severe one and must be
confined to cases coming clearly within the provisions of the law."
*Guillotte* v. *Jennings*, 4 An. 242.

5. Plaintiff was not properly put in default in order to render the
second sale good *à la folle enchère.*    *Stewart* v. *Paulding*, 6 La. 155 ; *Hodge*
v. *Moore*, 3 Rob. 400 ; *Petit* v. *Laville*, 5 Rob. 117.

Third. Admitting, for the sake of argument, that the adjudication to
Maynard was in fact and at law a sale *à la folle enchère*, the defendants
even then have not the legal right to subject Miltenberger to the pay-
ment of the expenses incurred subsequent to the first adjudication.

If at the second crying the thing is adjudged *for a smaller price*
than that which had been offered by the person to whom the first adjudi-
cation was made, the latter remains a debtor to the vendor for the de-
ficiency, and for all the expenses incurred subsequent to the first sale.
C. C. 2589.

The liability of the first purchaser, by this article of the Code, is made
conditional, and entirely depends upon the fact of the property being
adjudicated, at the second sale, for a smaller price than that which had
been offered by the person to whom the first adjudication was made.
If the second bid is smaller than that offered at the first sale, the first
purchaser must pay all the expenses incurred subsequent to the adjudi-
cation to him, but not otherwise.   Such is the express provision of Art.

2589, and this honorable court has said, in *Guillotte* v. *Jennings*, already MILTENBERGER
quoted, that the remedy, *à la folle enchère*, is a severe one, and must be *v.* HILL.
confined to cases *coming clearly* within the provisions of law.

Applying these rules to the case at bar, how can plaintiff be made
liable, directly or indirectly, for the expenses incurred subsequent to the
first sale ?

Fourth. The amount of expenses, if chargeable to plaintiff, must be
fixed at figures less even than those adopted by the Court *a quo* in the
judgment appealed from. *Vide* charges set forth in defendant's account
annexed to their answer, on pages 10 and 11 of transcript of appeal.

1. Interest.—So far as interest is concerned, the second sale was made
upon the same terms as the first ; and defendants having realized, in that
respect, from Maynard, all that they were entitled to receive from Mil-
tenberger, can have no legal reclamation upon the latter for interest. If
the terms of the second adjudication did not provide for the payment of
the interest, defendants are at fault and are entitled to no relief on that
account. Moreover, the District Judge has rejected defendant's demand
for interest, and they have neither appealed from the judgment of the
Court *a quo*, nor asked for an amendment of that judgment.

2. City and State taxes.—The District Judge says : "Plaintiff caused
the estate to pay taxes for the year 1858, which should be paid by him, a
portion of the taxes claimed by defendants having accrued while they or
the estate *were in default as to title*."

If the estate was in default, *at the time of adjudication* to plaintiff, in
giving him a valid title, how can he be condemned to pay any part of the
taxes ? The subsequent curing of a title, acknowledged to have been de-
fective originally, can have no such legal effect.

3. Clerk's costs.—There is but one item in the clerk's bill of costs pro-
perly chargeable as expenses incurred subsequently to the first sale.
(Record, pp. 47 and 48.) We have reference to the item of $2, for order
of sale. The other items of the clerk's bill, although necessary to cure a
defect of title, were unnecessary to a sale *à la folle enchère*, which pre-
supposes no defect of title at the time of the first sale. The Judge *a quo*
reduced the charge for clerk's costs to $2; and in this judgment defendants
and appellees have virtually acquiesced.

4. Sheriff's costs.—Costs of sheriff, incidental to resale, $1 50, not
disputed.

5. Auctioneer's bill.—This item, $84 25, seems to have grown out en-
tirely of the second sale, and is therefore admitted. It was allowed by
the Court *a quo*.

6. Attorney's fees—$342 and expenses of family meetings, etc.

If the first adjudication to Miltenberger conveyed a good and sufficient
title, and he refused to comply with the terms of his purchase, the remedy
was simple, requiring no professional skill and labor, and the intervention
of no family meeting. Services of counsel were rendered, it is true, but
these services were occasioned by the fact that the estate was not in a con-
dition to give a good title at the time of plaintiff's purchase, and profes-
sional skill and labor were required to remedy that defect. The Court
*a quo* erred in allowing $50 on account of the services of counsel, particu-

larly as no evidence in the record authorized the estimate adopted by the judge.

*Whitaker, Fellows & Mills for defendants.*—There are decisions, for instance, 1 L. R. 401, and 7 L. 506, which apply to a case where the property brings less at the second sale. The first purchaser pays the "deficiency in the price, and all the expenses incurred subsequent to the first sale." The same article of the Code provides, "if a higher price is offered for the thing than that for which it was first adjudged, the first purchaser has no claim for the excess."

Now, by the first clause of Article 2589, C. C., the purchaser at the first sale is to make completely whole the vendor; this includes all the expenses incurred. If the first purchaser has *no claim* for the excess at the second sale, how can it be claimed that he is to benefit by using the excess towards the payment of the expenses incurred, and for which he is absolutely responsible? There is no decision on the subject in our books, and the letter of the Code is so clear that it would seem one was hardly necessary. Suppose the excess of price is $100, and the expenses $200, who is responsible for the difference? Or again, suppose the price bid at the second sale is the same as at the first, who pays the expenses? Undoubtedly, the first purchaser; and yet the reasoning of the plaintiff would lead to exactly the contrary conclusion, in both of the supposed cases.

The only reasonable interpretation of Article 2589, C. C., appears to be that the purchaser at the first sale is, in all events, to pay all the expenses incurred subsequent to that sale; he is also to make up the deficiency of the price, if the property sells for less; but, if it sells for more, "he has no claim for the excess."

The next question is in regard to the items claimed in reconvention.

The plaintiff has been in possession of the property for years. He should, most undoubtedly, reimburse the taxes paid by defendants, which accrued after a clear title was ready for him. This was 19th April, 1858. The court allowed $90, being the taxes for one year. The time was one year and two months: say from April, 1858, to June, 1859. The additional proportion, one-eighth, would be $15.

. The attorney's fees, for perfecting the title and procuring a re-sale, were admitted to be reasonable at $342. It was proved that, for perfecting the title, $250 was a large fee. (Labatt's testimony.) This would leave for the re-sale $92; the judgment allows but $50.

The notary's fees were paid, and shown to be reasonable at $79; the judgment allowed but $29, rejecting that portion of his bill for holding the family meeting, etc., on the ground that it was not absolutely necessary for the re-sale. Now, this was a re-sale where a minor was interested, and there was a suit for the price, a suit for damages, or a re-sale, as the different means of redress which might be pursued.

And it is submitted that a title by resale would have been of doubtful validity, unless a family meeting had determined for the minor which course was the best to pursue. It was then a necessary expense incurred in behalf of the minor, occasioned by the failure of the plaintiff to comply with his bid, and take title of his property.

LABAUVE, J. The plaintiff claims against the defendants the sum of $650, with interest, on the ground that a short time previous to the 20th October, 1857, said Mrs. Hill did sell to him certain property, in consideration of which he advanced, in part payment to said Mrs. Hill, the sum of $650; that said defendants were unable to make title of said property to said plaintiff, and that the said property was resold to other parties at the risk of petitioner; that the property, at the re-sale, brought more than at the first sale.

The defendants answered by a general denial; and, for further answer, they say: that on the 19th October, 1857, by virtue of an order of Court in the succession of Reed, the property was exposed at public sale and adjudicated to said Charles A. Miltenberger, for the price of $8,000, of which $1,500 were payable cash, and the balance on the 1st June, 1864, with interest at 8 per cent. per annum, payable annually; that after the said purchase, on the 20th October, 1857, the said Miltenberger paid on said price the sum of $650, but refused to pay any further portion of said cash, nor to give his notes as required by the adjudication; that pursuant to the deliberation of another family meeting and an order of the Judge, the said property was re-sold, at the *risk of said Miltenberger,* for $8,500, upon the same terms as before; and they say that the difference between the first and the second sales is $835 49, which the cash proceeds of the second sale failed to supply.

The second sale took place on the 11th June, 1859, and the property was adjudicated to one Maynard, who transferred his title to the plaintiff on the 9th December, 1859. The plaintiff contends that he was not properly put in default, in order to render the second sale good *à la folle enchère.*

There is no evidence showing that said plaintiff was ever put in default; but he pleads and admits in his petition that the property was *resold at his risk,* and it is in evidence that he bought, on the 9th December, 1859, from the second purchaser, Maynard, at the sale made *à la folle enchère;* thereby approving and ratifying the said sale *à la folle enchère,* under which he now holds, and admitting that the said second sale was legal, and that he had been put legally in default.

The next question is one purely of law, and that is in regard to the proper application and interpretation of the second paragraph of Article 2589 of the Civil Code, reading thus:

"And if, at the second crying, the thing is adjudged for a smaller price than that which had been offered by the person to whom the first adjudication was made, the latter remains a debtor to the vendor, for the deficiency, and for all expenses incurred subsequent to the first sale. But if a higher price is offered for the thing than that for which it was first adjudicated, the first purchaser has no claim for the excess."

There are two clauses in this paragraph, each with a penalty imposed on the first purchaser. By the first clause, the first purchaser is bound to make up the deficiency between the first and the second sales, and to pay all expenses incurred subsequent to the first sale; by the second clause, the purchaser has no claim to the excess above the price of the first adjudication. This excess goes to the vendor, although the purchaser be the legal owner of the thing, which is at the risk of the latter,

MILTENBERGER
v.
HILL.

after the adjudication. Civil Code, Arts. 2442, 2443, 2586. The price of the second sale exceeded that offered at the first adjudication, and we have to apply the second clause of the second paragraph of the Art. 2589 of the Civil Code. But it is contended that the first purchaser is liable for all cost even under the said second clause. We think not. We cannot add another penalty to the law; it was for the legislator to do so. The remedy by sale à la folle enchère is a severe one, and must be confined to cases coming clearly within the provisions of the law. 4 A. 242. The vendors here could have prosecuted the plaintiff for a specific compliance with the terms of the sale, or for damages, by ordinary action, or proceeded to a re-sale at the risk of the plaintiff. 2 L. 403; 7 L. 508; 14 L. 559. They have selected the last remedy; they must stand by the law governing the case, and which it is our duty to apply strictly, as it is a penal one.

We are of the opinion that plaintiff in this case is not bound for the cost incurred subsequent to the first adjudication.

It is therefore adjudged and decreed that the judgment of the District Court be reversed; that the defendants' demand in reconvention be rejected, and that plaintiff recovers of the defendants in solido the sum of six hundred and fifty dollars, with legal interest thereon from the 30th March, 1859, and costs of suit in both courts.

HOWELL, J., who tried this case below, did not participate in this decision.